O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| HILLARY VILLAREAL,<br><br>   Plaintiff,<br><br> vs.<br><br>CHUBB & SON, INC., et al.<br><br>   Defendants. | Case No.: SACV 11-0674 DOC(RNBx)<br><br>**ORDER DENYING DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT** |

  Before the Court is a Motion for Summary Judgment filed by Defendants Chubb & Son, a Division of Federal Insurance Company (erroneously sued and served as Federal Insurance Company dba Chubb & Son) and Chubb & Son, Inc. (collectively, "Defendants") (Docket 30). After considering the moving, opposing, and replying papers, as well as oral argument, the Court DENIES the Motion for Summary Judgment.

  Plaintiff asserts claims for (1) gender discrimination in violation of the California Fair Employment and Housing Act (the "FEHA"), California Government Code Section 12940(a);

(2) retaliation in violation of the FEHA, Section 12940(h); (3) failure to prevent discrimination in violation of the FEHA, Section 12940(k); (4) a violation of the California Family Rights Act ("CFRA"), California Government Code Section 12945.2; and (5) wrongful termination in violation of public policy.

### I. Background[1]

On June 1, 1999, Plaintiff Hillary Villareal ("Plaintiff") began working at Chubb as a Commercial Underwriter. Defendants' Response to Plaintiff's Separate Statement of Controverted Facts, ¶ 1 (Docket 52-3) ("Resp. SOF "). Plaintiff was one of six Senior Underwriters who reported to Serena Hecker-Battles ("Hecker"). *Id.* at ¶ 3, 14. Hecker's supervisor was Vice President Ed Rochford, whose supervisor was Regional Manager Jim Darling. *Id.* at ¶ 6, 9-10.

Defendants argue that Hecker was responsible for hiring and promoting Plaintiff. Defendants' Reply Statement of Genuine Issues, ¶ 5 (Docket 52-2) ("Reply SOF"). Yet, Defendants cite only to Plaintiff's deposition, which merely states that Hecker was her only interview when she began working at Chubb for the second time and that the interview process was relatively short. Villareal Depo., 62:18-24. Defendants also state that Hecker "assisted" Plaintiff in her promotion to Senior Underwriter. Reply SOF, ¶ 9. In Plaintiff's deposition, Plaintiff only states that she believes Hecker "would have supported" her but makes clear that she has no knowledge as to Hecker's involvement in her promotion. *Id.* at 76: 4-11.

<u>The December 3, 2009 Email</u>

On December 3, 2009, Plaintiff sent Hecker an email intended for Jennifer Morena, another Senior Underwriter ("Morena"). Resp. SOF, ¶ 15; Reply SOF, ¶ 17; Villareal Depo., 223: 5-9. The body of the email read as follows:

---

[1] The Court has reviewed all evidentiary objections and exclusively relies on admissible evidence in deciding the Motion for Summary Judgment.

> Just talked to Serena. She called to do the very important work of scheduling a lunch with Jeff Rokos. I could NOT contain my scorn for her. I will probably get in trouble. I asked her who of her "folks were coming "up" for the holidays?? She said she just couldn't invite one boy without the other. She sees them as a set and inseparable. I already told Jason. I think he is a little pissed about it. She also forgot she gave him vacation that entire week. She asked how things were going for me, I said I was buried…she said, oh yes…all of those January renewals I have…I said I don't have any January renewals…there was a pause…I said I have the Auto Club….she said YESSSS…Hillary…I know about that one, in her Hillary is a big whiner/martyr I know what is going on voice….great she doesn't have a fucking clue and it's my fault.
>
> Dan came over on Taylor just to show me the spread sheet and ask if he did it right…he hadn't done ANYTHING. He doesn't know how to access eRe from CUW to look at an eRe sub to copy and edit for the upcoming year.

Hecker Decl., Exh. 2. Plaintiff was issued a "Written Conduct Warning" for sending the December 3rd email because it violated the Chubb Code of Conduct. Villareal Depo., 232: 19 – 233: 6; 240: 19 – 241:7; Axel Decl., ¶ 8. The Written Conduct Warning stated that Plaintiff had violated a provision of the Chubb Code of Conduct that stated as follows: "We expect you to observe applicable laws and ethical standards in all matters concerning the Company, and to treat everyone with whom you come in contact, including your co-workers, with respect and dignity." Axel Decl., Exh. 5. Plaintiff's Warning stated that "This is a Warning that any violation of You & Your Company, The Chubb Corporation Code of Business Conduct, Chubb's Electronic and Communications Policy or other Chubb policies can be grounds for disciplinary action up to and including termination of employment." *Id.*

The April 21, 2010 Meeting

Defendants next allege that on April 21, 2010, Plaintiff engaged in disruptive behavior at a meeting by repeatedly challenging Hecker. *See* Hecker Decl., ¶ 22. Hecker felt that Plaintiff asked questions suggesting that Hecker was withholding important information from her staff, which undermined her authority. *Id.* After Hecker informed Karen Axel, the HR representative, about Plaintiff's actions during the meeting, Axel commenced a "fact-finding investigation." Axel Decl., ¶11-12. During the investigation,

Axel interviewed three employees who attended the meeting. Cesar Valencia, an Assistant Vice President Commercial Lines, felt that Plaintiff's tone was accusatory and her actions were "unprofessional and disrespectful." Valencia Decl., ¶ 7-8. James Dickey, a Senior Underwriter, thought Plaintiff's comments were "out of line" and "were implying that Ms. Hecker failed to perform one of her duties." Dickey Decl., ¶ 8. Mildred Rodriguez, stated that although she felt that Plaintiff "was grilling the manager" and that Plaintiff "should be stopping when [she] got her answer," Plaintiff was not speaking in a hostile or elevated tone and that her words were not inappropriate or disrespectful. Rodriguez Depo., 23: 23-25; 24: 4-9; 49:11-23; 55: 10-17. Rodriguez was surprised that Plaintiff was fired. *Id.* at 70: 18-19. Based on her investigation, Axel believed that Plaintiff was "continuing a pattern of disrespectful behavior" and recommended that she be terminated. Axel Decl., ¶ 13. Hecker, Rochford, and Ramona Pringle, Vice President of Human Resources, approved the termination, which directly led to Plaintiff's actual termination. *Id.* at ¶ 14.

Plaintiff, not surprisingly, has a different interpretation of the April 21, 2010 meeting. She has submitted multiple declarations from other employees that indicate Plaintiff's behavior was not a violation of the Code of Conduct, such that it should not have resulted in her termination. Dan Gould could not even remember if Plaintiff was at the April 21, 2010 meeting, much less whether she said anything objectionable. Gould Depo., 87: 3-21. Another employee, Jennifer Morena, described Plaintiff's tone during the meeting as "matter of fact, informational" and not hostile or antagonistic. Morena Depo., 153: 23-25; 154: 4-11. Beth Lopez felt that Plaintiff "behaved professionally and did not criticize or badger" Hecker and remembers that no other team member mentioned feeling uncomfortable about Plaintiff's comments during the meeting. Lopez Decl. ¶ 3.

<u>Plaintiff's Alternative Theories</u>

Plaintiff disputes that she was fired due to her behavior at the April 21st meeting and instead argues that she was the victim of Hecker's sex discrimination. Plaintiff points to a number of facts that she believes indicate Hecker's discriminatory viewpoints. For example,

Hecker apparently called Plaintiff a "premium whore" to her face and in front of other coworkers. Villareal Decl., ¶ 8; Morena Depo, 98:7-20. Other employees, Beth Lopez and Jennifer Morena, heard Hecker make comments that "she liked having men around and that they were 'eye candy.'" Lopez Decl., ¶ 7; Morena Depo., 79: 22-25; 80:1-14 . Lopez also "personally witnessed and experienced [Hecker] treating the male employees more favorably than the female employees." *Id.* at ¶ 5. For example, Hecker would take the male employees to attend events with vendors but would never invite the female employees. *Id.* Hecker also audited Lopez for two errors but never audited a male employee who made a more costly error. *Id.* From October 2000 until the end of Plaintiff's employment in April 2010, Hecker only hired males. Hecker Depo., 25:4-21. Plaintiff's position was also filled by a male, and when he left, Hecker hired another male employee to take over the position. *Id.,* 33: 1-11; 34: 8-18; 35: 4-12.

  Plaintiff alternately argues that she was fired in retaliation for requesting time off pursuant to the CFRA. After the April 21st meeting, Plaintiff told Hecker that she needed to take some time off to care for her ailing father. Response to SOF, ¶ 266. It is undisputed that Hecker did not contact HR to complain about Plaintiff's behavior at the meeting until after Plaintiff asked for time off. *Id.* at ¶ 267. Plaintiff argues that her termination was only the culmination of a long history of intolerance of Plaintiff taking the leave to which she was entitled. Plaintiff had lodged multiple complaints with Axel related to Hecker's increased scrutiny of Plaintiff's medical leave. Axel Depo. 120:23 – 121:2. Hecker gave Plaintiff "a hard time" about Plaintiff's request for leave to take care of her mother after a stroke. Axel Depo. 100:12 – 101: 1; 128:6-11. Additionally, after Plaintiff had gallbladder surgery, Hecker lied to gain access to Plaintiff's housing development and showed up unannounced at Plaintiff's house, despite the fact that she knew Plaintiff would not want to see her. Morena Depo.168:11 – 71:11. Hecker also commented that Plaintiff shouldn't need three weeks off for her surgery because when Hecker had lapband surgery, she only took two weeks off and accused Plaintiff of getting on the longest case she could when Plaintiff had jury duty. *Id.* 64:4-6; 64:13-22.

  Defendants argue that Plaintiff was only fired for her violation of the Chubb Code of Conduct and accordingly seek summary judgment on each of Plaintiff's claims.

## II. Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III. Discussion

#### a. Gender discrimination in violation of the FEHA, Section 12940(a)

The FEHA makes it an unlawful employment practice for an employer, "because of the . . . sex of any person, . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment." California Gov't Code, § 12940(a). The Fair Employment and Housing Commission (FEHC), the agency charged with administering the FEHA, has made clear that "[t]he purpose of the law against discrimination in employment because of sex is to eliminate the means by which individuals of the female sex have historically been relegated to inferior jobs and to guarantee that in the future both sexes will enjoy equal employment benefits." Cal. Code Regs. tit. 2, § 7290.6.

"When entertaining motions for summary judgment in employment discrimination cases arising under state law, federal courts sitting in diversity must apply the *McDonnell Douglas* burden-shifting scheme as a federal procedural rule." *Zeinali v. Raytheon Co.,* 636 F.3d 544, 552 (9th Cir. 2011). Under the *McDonnell Douglas* burden-shifting scheme, the employee must establish a prima facie case of discrimination. The burden then shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse action. If the employer satisfies this burden, the employee must show that reason to be pretext by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (quoting *Dawson v. Entek Int'l,* 630 F.3d 928, 934 (9th Cir. 2011)).

To establish a prima facie case of sex discrimination under FEHA or Title VII, a plaintiff must demonstrate that (1) she was a member of a protected class; (2) she was qualified for the position she sought or performing competently in the position she held; (3) she suffered an adverse employment action; and (4) some other circumstance suggests discriminatory motive. *Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 355 (2000) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1980)). "Because California law under the FEHA mirrors federal law under Title VII, federal cases are instructive." *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217,

1219 (9th Cir. 1998) (citing *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir. 1996)). *See also Lyle v. Warner Bros. Television Productions,* 38 Cal. 4th 264, 278 (2006); *Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 354 (2000). Therefore, although Plaintiff only asserts a claim under the FEHA, the Court will also rely upon Title VII cases.

Here, Defendants do not address whether Plaintiff has pled a prima facie case but rather jump to their legitimate, non-discriminatory reason for terminating Plaintiff. As such, the Court will begin its analysis by determining whether Defendants have satisfied their burden of articulating a legitimate, nondiscriminatory reason for terminating Plaintiff.

According to Defendants, Plaintiff was terminated because she violated the Code of Conduct. Motion for Summary Judgment ("MSJ"), 15. Defendants first point to Plaintiff's email to Hecker, which stated that Hecker "doesn't have a fucking clue." Axel Decl., Exh. 2. After the email incident, Plaintiff was provided with a written warning that she could be subjected to further discipline, including termination, if she engaged in any further violation of the Code of Conduct. Axel Decl., ¶ 8; Exh. 5. Defendants argue that the straw that broke the camel's back was Plaintiff's conduct at the April 21, 2010 meeting, in which Plaintiff engaged in disruptive behavior at a meeting by repeatedly challenging Hecker. *See* Hecker Decl., ¶ 22. Certain other employees agreed with Hecker that Plaintiff was disrespectful during the meeting. For example, Cesar Valencia, an Assistant Vice President Commercial Lines, felt that Plaintiff's tone was accusatory and her actions were "unprofessional and disrespectful." Valencia Decl., ¶ 7-8. James Dickey, a Senior Underwriter, thought Plaintiff's comments were "out of line" and "were implying that Ms. Hecker failed to perform one of her duties." Dickey Decl., ¶ 8. After completing her fact-finding investigation of the incident, Axel believed that Plaintiff was "continuing a pattern of disrespectful behavior" and recommended that she be terminated, after which Plaintiff was terminated. Axel Decl., ¶ 13-14.

Defendants have thus proffered a legitimate, nondiscriminatory reason for Plaintiff's termination. *See Stegall v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1075 (9th Cir. 2003) (finding a valid nondiscriminatory reason where plaintiff "did not place a priority on

maintaining strong working relationships and thus displayed a poor attitude toward her job and her co-workers).

The burden then shifts back to Plaintiff to show that Defendants' reason for her termination is mere pretext. To survive summary judgment, Plaintiff "must produce enough evidence to allow a reasonable factfinder to conclude *either*: (a) that the alleged reason for [Plaintiff's] discharge was false, *or* (b) that the true reason for [her] discharge was a discriminatory one." *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 918 (9th Cir. 1996). *See also Zeinali,* 636 F.3d at 552.

"When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). *See also Noyes v. Kelly Services,* 488 F.3d 1163, 1170 (9th Cir. 2007) ("[I]n the context of Title VII claims, the burden on plaintiffs to raise a triable issue of fact as to pretext is 'hardly an onerous one.'") (quoting *Payne v. Norwest Corp.,* 113 F.3d 1079, 1080 (9th Cir. 1997)); *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1411 (9th Cir. 1996) (noting the "reluctance of this Circuit to allow summary judgment where there is direct or circumstantial evidence of discriminatory intent").The *Godwin* court went on to explain that direct evidence is "evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* In that case, a supervisor commented that he "did not want to deal with another female;" there were hunting and fishing trips to which female employees were not invited; and the president of the company made derogatory comments about women. *Id.* The plaintiff in *Godwin* had also presented indirect evidence suggesting that the employer's proffered reason – that the selected male applicant had a more desirable personality – was mere pretext. *Id.* at 1222. The Ninth Circuit found this combination of indirect and direct evidence sufficient to raise a genuine issue of fact as to whether the employer's asserted nondiscriminatory reason was, in fact, the truth.

Here, like in *Godwin,* Plaintiff has demonstrated a material issue of fact as to pretext both directly – by providing evidence of discrimination – and indirectly – by showing that Defendants' explanation is not worthy of credence.

1 First, Plaintiff has provided direct evidence creating a material issue of fact as to whether
2 a discriminatory reason more likely motivated Defendants. Plaintiff has provided evidence of
3 comments and actions that could, if found credible, demonstrate a bias against women. For
4 example, Hecker apparently called Plaintiff a "premium whore" to her face and in front of other
5 coworkers. Villareal Decl., ¶ 8; Morena Depo, 98:7-20. Other employees, Beth Lopez and
6 Jennifer Morena, also heard Hecker make comments that "she liked having men around and that
7 they were 'eye candy.'" Lopez Decl., ¶ 7; Morena Depo., 79: 22-25; 80:1-14.

8 Evidence of an employer's discriminatory treatment of other members of a protected
9 class may create an inference of discriminatory intent toward plaintiff. *See, e.g., Obrey v.*
10 *Johnson,* 400 F.3d 691, 697 (9th Cir. 2005). Here, Plaintiff presents evidence of potentially
11 discriminatory behavior by Hecker towards other women in the office. Lopez states that she
12 "personally witnessed and experienced [Hecker] treating the male employees more favorably
13 than the female employees." *Id.* at ¶ 5. For example, Hecker would take the male employees to
14 attend events with vendors but would never invite the female employees. *Id.* Hecker also audited
15 Lopez for two errors but never audited a male employee who made a more costly error. *Id.*
16 From October 2000 until the end of Plaintiff's employment in April 2010, Hecker only hired
17 males. Hecker Depo., 25:4-21. Plaintiff's position was also filled by a male, and when he left,
18 Hecker hired another male employee to take over the position. *Id.,* 33: 1-11; 34: 8-18; 35: 4-12.
19 These facts, if found to be credible, could lead a reasonable jury to believe that it was more
20 likely Plaintiff was terminated because of her sex.

21 Plaintiff has also provided indirect evidence creating a material issue of fact as to whether
22 Defendants' explanation is worthy of credence. Plaintiff has submitted multiple declarations
23 from attendees at the meeting that indicate Plaintiff's behavior was not a violation of the Code
24 of Conduct, such that it should not have resulted in her termination. Dan Gould could not even
25 remember if Plaintiff was at the April 21, 2010 meeting, much less whether she said anything
26 objectionable. Gould Depo., 87: 3-21. Jennifer Morena described Plaintiff's tone during the
27 meeting as "matter of fact, informational" and not hostile or antagonistic. Morena Depo., 153:
28 23-25; 154: 4-11. Beth Lopez felt that Plaintiff "behaved professionally and did not criticize or

1 badger" Hecker and remembers that no other team member mentioned feeling uncomfortable
2 about Plaintiff's comments during the meeting. Lopez Decl. ¶ 3. Specific positive assessments
3 of a plaintiff's performance by her coworkers may constitute 'specific and substantial'
4 circumstantial evidence of pretext. *See, e.g., EEOC v. Boeing Co.,* 577 F.3d 1044, 1051 (9th Cir.
5 2009). Whether or not Plaintiff's behavior at the April 21, 2010 meeting was sufficiently
6 insubordinate to qualify as a violation of the Code of Conduct is a credibility determination not
7 appropriate for summary judgment, given the conflicting accounts of Plaintiff's behavior.

8 The Court finds that Plaintiff has produced both direct and circumstantial evidence
9 demonstrating that Defendants' proffered reason was not their actual motive. *See Godwin,* 150
10 F.3d at 1222.

11 Defendants argue that the same-actor inference prevents Plaintiff from proving pretext.
12 The Court disagrees. The same-actor inference arises when the same actor is responsible for
13 both the hiring and firing of a plaintiff and both of those actions occur within a short period of
14 time. *Coghlan v. American Seafoods Co. LLC,* 413 F.3d 1090, 1096 (9th Cir. 2005). Defendants
15 have first failed to demonstrate that the same-actor inference should apply. Additionally, unlike
16 the plaintiff in *Coghlan,* Plaintiff's direct evidence of discrimination would overcome the same-
17 actor inference, even if it was to be applied.

18 First, Defendants have not shown that the same-actor inference is appropriate in the
19 present situation. Contrary to Defendants' assertion, it is not clear that Hecker was responsible
20 for hiring and promoting Plaintiff. Plaintiff stated that Hecker was her only interview when she
21 began working at Chubb for the second time; however, she also stated that the interview process
22 was relatively short. Villareal Depo., 62:18-24. This Court has no information as to whether
23 Hecker had sole decision-making authority or any decision-making authority whatsoever.
24 Similarly, there is no clear evidence indicating that Hecker was solely, mostly, or even partially
25 responsible for Plaintiff's promotion. Defendants only mention that Hecker "assisted" Plaintiff
26 in her promotion to Senior Underwriter. Reply SOF, ¶ 9. In her deposition, Plaintiff states that
27 she believes Hecker "would have supported" her but makes clear that she has no knowledge as
28

to Hecker's involvement in her promotion. *Id.* at 76: 4-11. Defendants have not provided any additional information demonstrating that Hecker was responsible for Plaintiff's promotion.

Additionally, there was not the "short time period" required to apply the same-actor inference. It is Defendants' burden to show that the same-actor inference should apply, and yet they have provided no information as to the timeline of Plaintiff's promotion. Plaintiff herself does not remember if it was before or after 2005, *see id.* at 75:21-25, which leaves the Court with the inference that it is more likely that Plaintiff was promoted at least five years before she was fired. Thus, even if Hecker had been responsible for Plaintiff's promotion, a sufficient amount of time has passed, such that the strong-actor inference is no longer applicable. In *Coghlan,* the court only held that a three year passage of time did not preclude the application of the same-actor inference because the plaintiff there did not provide evidence to suggest that the decision-maker had developed a bias during that period. 413 F.3d at 1097. In contrast, Plaintiff here has provided direct evidence of Hecker's discriminatory attitudes towards women in the years immediately preceding her termination. The same-actor inference is thus inapplicable to the present facts.

Even if the same-actor inference did apply in the case at bar, Plaintiff's evidence of pretext would still be sufficient to survive summary judgment. As the *Coghlan* court held, "*if* a plaintiff can muster the extraordinarily strong showing of discrimination necessary to defeat the same-actor inference, then the case must go to the jury." *Id.* In *Coghlan,* the plaintiff presented a case of discrimination that was entirely circumstantial and did not at all serve to refute the legitimate nondiscriminatory reason proffered by defendants. *Id.* at 1096-99. Here, as detailed above, Plaintiff provides both direct and circumstantial evidence of discrimination such that a rational factfinder could determine that the same-actor inference was overcome.

Defendants also argue that the fact that Heckler was also a woman weakens any possible inference of discrimination. The Court disagrees. The only relevant case within the Ninth Circuit on which Defendants rely[2] is completely distinguishable from the present facts. In *Pascual v.*

---

[2] Defendants' citation to *Coghlan* in this context is puzzling, as *Coghlan* makes no holding regarding any adverse inference that would result from the alleged discriminator being in the same protected class as the plaintiff.

*Astrue,* the plaintiff conceded that the person in question did not discriminate against her and also failed to present any evidence of direct or circumstantial discrimination. No. C 08-2906-SBA, 2009 WL 1125702, at *7 (N.D. Cal. Apr. 27, 2002). The *Pascual* court noted in one sentence that the decisionmaker in question had both hired and fired plaintiff and was also in the same protected classes as plaintiff. *Id.* That court, however, provided no authority for the proposition that being in the same protected class creates an adverse inference against discrimination; rather, it only cited to cases discussing the same-actor rule. *See id.* The two concepts are completely separate and should not be confused.  This Court agrees with the court in *Impey v. Office Depot,* which held that "discrimination can occur between members of the same protected class." No. C-09-01973 EDL, 2010 WL 2985071, at *16 (N.D. Cal. July 27, 2010). *See also Alms v. AdvancePCS,* No. 2:04-cv-00332 JWS, 2006 WL 2032746, at *4 (D. Ariz. July 18, 2006) ("the court will not apply an inference against age discrimination based on the fact [that the allegedly discriminating party] was also over forty").

Plaintiff has submitted direct evidence of discrimination, as well as circumstantial evidence calling into question Defendants' proffered reason, that is sufficient to overcome either of the adverse inferences offered by Defendants, neither of which is persuasive to this Court.

### b.  Retaliation in violation of the FEHA, Section 12940(h)

Under the FEHA, it is unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). To establish a prima facie case of retaliation under this section, a plaintiff must show: (1) he engaged in protected activity; (2) he was thereafter subject to adverse employment action; and (3) a causal link between the two. *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal.4th 1028, 1042, 32 Cal.Rptr.3d 436, 116 P.3d 1123 (2005); *Mathieu v. Norrell Corp.,* 115 Cal.App.4th 1174, 1185, 10 Cal.Rptr.3d 52 (2004). Once an employee establishes a prima facie case, the employer must provide a nonretaliatory reason for the adverse

employment action. *Morgan v. Regents of University of Cal.,* 88 Cal. App. 4th 52, 68 (2000). Much like the *McDonnell Douglas* framework, if the employer provides a legitimate reason for the adverse action, the presumption of retaliation disappears and the burden shifts back to the employee to prove intentional retaliation. *Id.*

Plaintiff argues that "[i]n retaliation for complaining about the illegal gender discrimination, Plaintiff was subjected to heightened scrutiny, unfairly reprimanded and criticized, subjected to undesirable work conditions, and terminated." Complaint, 6.

Defendants first conclusorily argue that Plaintiff fails to establish the casual link between her adverse action and "any protected activity" because "the record is devoid of any actions taken against Plaintiff because she engaged in protected activity." MSJ, 18. Defendants then merely incorporate by reference their discussion of the legitimate reason for Plaintiff's termination contained in their discussion of Plaintiff's gender discrimination claim. In so doing, Defendants fail to recognize that Plaintiff's retaliation claim was not based only on her termination but also on the fact that she was subjected to heightened scrutiny, unfairly reprimanded and criticized, and subjected to undesirable work conditions. Defendants did not correct this deficiency at oral argument.

Movants who lack the ultimate burden of persuasion at trial—such as Defendants here—can not "use a summary judgment motion as a substitute for discovery." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000). Such a movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Id. See also Henry v. Gill Indus., Inc.,* 983 F.2d 943, 950 (9th Cir. 1993) ("Summary judgment may be resisted and must e denied on no other grounds that the movant has failed to meet its burden of demonstrating the absence of triable issues."). Here, Defendants have completely failed to demonstrate the absence of triable issues in presenting their conclusory statements devoid of any factual or legal analysis. As such, summary judgment must be DENIED as to Plaintiff's retaliation claim because Defendants have not met their burden.

### c. Failure to prevent discrimination in violation of the FEHA, Section 12940(k)

Defendants argue that Plaintiff's claim for failure to prevent discrimination must fail because her other claims for discrimination fail. As discussed above, Defendants' Motion for Summary Judgment on Plaintiff's gender discrimination claim was denied, such that Defendants' argument no longer has any force. Defendants' Motion for Summary Judgment on Plaintiff's failure to prevent discrimination claim is thus DENIED.

### d. Violation of the California Family Rights Act ("CFRA"), California Government Code Section 12945.2

Plaintiff asserts that she was discharged in retaliation for seeking leave under the CFRA. The CFRA "is intended to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security." *Nelson v. United Technologies*, 74 Cal.App.4th 597, 606, 88 Cal.Rptr.2d 239 (1999).) Generally, the CFRA makes it an unlawful employment practice for an employer of 50 or more persons to refuse to grant an employee's request to take up to 12 "workweeks" in any 12–month period for family care and medical leave. *See* § 12945.2(a), (c)(2)(A); *Lonicki v. Sutter Health Central* 43 Cal.4th 201, 208–209, 74 Cal.Rptr.3d 570, 180 P.3d 321 (2008). The CFRA also prohibits an employer "to refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of" her "exercise of the right to family care and medical leave provided by subdivision (a)." § 12945.2 (*l* )(1); *see also* Cal.Code Regs., tit. 2, § 7297.7(a).

The elements of a retaliation claim in violation of the CFRA are: (1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action because of her exercise of her right to CFRA leave. *Dudley v. Department of Transportation,* 90 Cal.App.4th 255, 261, 108 Cal.Rptr.2d 739 (2001). CFRA retaliation claims operate under the now familiar burden-shifting structure. Once an employee establishes a prima facie case, the employer must offer a nonretaliatory reason for the

adverse employment action. *Faust v. California Portland Cement Co.,* 150 Cal. App. 4th. 864, 885 (2007). If the employer provides a legitimate reason, the presumption of retaliation evaporates and the burden shifts back to the employee to prove intentional retaliation. *Id.*

Again, Defendants do not challenge Plaintiff's prima facie case but rather assert that Plaintiff was terminated for her Code of Conduct violations. Defendants argue that they had raised concerns about Plaintiff's attitude in 2006 and 2009 before her CFRA request and note that Plaintiff was on a written warning before her request for time off pursuant to the CFRA. MSJ, 22. As such, Defendants have presented a legitimate, nondiscriminatory reason for Plaintiff's termination.

Plaintiff's opposition brief, as discussed in this Court's tentative order, did not meet her burden of proving pretext because she attempted only to apply her general allegations of pretext for her other claims to oppose Defendants' Motion for Summary Judgment on her CFRA claim. At oral argument, however, Plaintiff remedied this deficiency and pointed to numerous specific facts that a reasonable fact-finder could determine were evidence of pretext. First, it is undisputed that Hecker did not complain to Axel about Plaintiff's behavior at the meeting until after Plaintiff requested time off to care for her father. Hecker Depo. 217:13 – 218: 15. Plaintiff also, at oral argument, averred that Hecker even worked closely and productively with Plaintiff all day after the meeting, until such point that Plaintiff requested the leave.

Defendants, at oral argument, pointed to *Arteaga v. Brink's, Inc.* as support for the proposition that "temporal proximity alone is not sufficient to create a triable issue as to pretext." 163 Cal. App. 4th. 327, 353 (2008). The *Arteaga* court went on to clarify, however, that "temporal proximity, *together* with the *other* evidence, may be sufficient to establish pretext." *Id.* at 354. That is exactly the case here, where Plaintiff has presented additional evidence of pretext.

According to Plaintiff, her termination in retaliation for her leave request is only the last in a long line of instances of Hecker taking issue with Plaintiff seeking family and medical leave. Plaintiff lodged multiple complaints with Axel related to Hecker's increased scrutiny of Plaintiff's medical leave. Axel Depo. 120:23 – 121:2. Hecker also gave Plaintiff "a hard time"

about Plaintiff's request for leave to take care of her mother after a stroke. Axel Depo. 100:12 – 101: 1; 128:6-11. Additionally, after Plaintiff had gallbladder surgery, Hecker lied to gain access to Plaintiff's housing development and showed up unannounced at Plaintiff's house, despite the fact that she knew Plaintiff would not want to see her. Morena Depo.168:11 – 71:11. Hecker also commented that Plaintiff shouldn't need three weeks off for her surgery because when Hecker had lapband surgery, she only took two weeks off and accused Plaintiff of getting on the longest case she could when Plaintiff had jury duty. *Id.* at 64:4-6, 13-22. Because Plaintiff does not solely rely on the temporal proximity of her termination to her request for leave, she has presented sufficient evidence of pretext to the point that it must be left as a question of fact for the jury.

### e. Wrongful termination in violation of public policy

Defendants argue that "Plaintiff's public policy claim is only as valid as her statutory claims."MSJ, 23. Because Plaintiff's other claims survive summary judgment, Defendants' argument lacks merit and summary judgment on the wrongful termination claim is DENIED.

### f. Punitive Damages

Plaintiffs may recover punitive damages in an action for the breach of an obligation not arising from contract when they can prove by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. Cal. Civ. Code § 3294(b). Corporate employers are only liable for punitive damages when "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud or malice" is on the part of an officer, director, or managing agent of the corporation.

Defendants first argue that Plaintiff has only alleged conduct by supervisors who are not "managing agents." The California Supreme Court has held that the term "managing agent" includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy" and that the power to hire and fire is not sufficient. *White v. Ultramar, Inc.*, 21

1  Cal. 4th 563, 566-67 (1999). Corporate policies are those that "affect a substantial portion of the
2  company and that are the type likely to come to the attention of corporate leadership. *Roby v.*
3  *McKesson Corp.,* 47 Cal. 4th 686, 714 (2009). The scope of a corporate employee's discretion
4  of authority is fact-intensive and must be made on a case by case basis. *Id.* at 567.

5        Due to the fact-intensive nature of the managing agent inquiry, case law is of somewhat
6  limited relevance but can still beneficial in determining what level of responsibility courts have
7  found to qualify an employee as a managing agent. In *White*, for example, the court found that a
8  zone manager who managed eight stores and sixty-five employees should be considered a
9  managing agent, regardless of the fact that she spoke with other employees and consulted the
10 human resource department before firing the plaintiff. *Id.* at 577. *Cf. Roby,* 47 Cal. 4th at 715
11 (employee who supervised four of the company's 20,000 employees was not a managing agent).

12       Defendants here argue that the four supervisors discussed by Plaintiff – Axel, Pringle,
13 Hecker, and Rochford (the "supervisors") – were not managing agents. Defendants support this
14 argument with three conclusory sentences. The supervisors "were all required to follow and
15 apply Chubb's policies;" "did not have the authority to change Chubb's policies or to create
16 Chubb policy;" "did not guide Chubb's corporate conduct and lacked the discretionary authority
17 to make decisions that ultimately determine Chubb's corporate policy." MSJ, 24-5. The analysis
18 of whether an employee is a managing agent is a *fact*-intensive inquiry, and Defendants have
19 only provided this Court with what are essentially legal conclusions. The Court does not have
20 enough information about each supervisor's job responsibilities to determine that, as a matter of
21 law, any of the supervisors is a managing agent. *See, e.g. Mitri v. Walgreen Co., Inc.,* No. 1:10-
22 cv-538 AWI SKO, 2011 WL 5118452, at *4-6 (E.D. Cal. Oct. 27, 2011) (where the court
23 engaged in an extremely detailed, fact-intensive analysis of a supervisor's job duties to
24 determine if the jury had correctly determined that he was a managing agent). Although at trial
25 Plaintiff will bear the burden of proving that the supervisors are managing agents, this is not
26 Plaintiff's motion for summary judgment. At this stage, it is Defendants' burden to demonstrate
27 that judgment as a matter of law is appropriate. They have not met that burden.

28

**IV. Disposition**

For the aforementioned reasons, Defendants' Motion for Summary Judgment is DENIED.

DATED: July 31, 2012

*David O. Carter*
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE